UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YAHOO, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> CENTRAL INTELLIGENCE AGENCY, <br><br> Defendant. | Civil Action No. 22-1477 (CKK) |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, the Central Intelligence Agency, by and through undersigned counsel, hereby submits this Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Accompanying this motion is a memorandum of points and authorities, a supporting declaration, a statement of material facts not in dispute, and a proposed order. Defendant respectfully requests that the Court grant the motion for the reasons described in the accompanying memorandum.

Respectfully submitted,

MATTHEW M. GRAVES, D.C. BAR #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: _/s/ Jeremy S. Simon_
JEREMY S. SIMON, D.C. BAR #447956
Assistant United States Attorney
601 D. Street, N.W.,
Washington, D.C. 20530
(202) 252-2528
Jeremy.Simon@usdoj.gov

_Counsel for United States of America_

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

YAHOO, INC., et al.,

        Plaintiffs,

        v.

CENTRAL INTELLIGENCE AGENCY,

        Defendant.

Civil Action No. 22-1477 (CKK)

## **DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

1.      Plaintiff Yahoo, Inc. and Michael Isikoff ("Plaintiffs") submitted a Freedom of Information Act ("FOIA") request to Defendant, the Central Intelligence Agency ("CIA"), dated January 24, 2017, seeking: (1) "all records—including documents, emails, memos, calendar entries, and any other federal records—relating to a visit by Alexander Bortnikov, Director of the Russian FSB, to the CIA for a meeting with John Brennan, the director of the CIA, in Feb[ruary] 2015" and (2) " all records—including documents, emails, memos and any other federal records—relating to a phone call placed by Director Brennan to FSB Director Bortnikov in the summer of 2016." (Williams Decl. ¶ 6 and Ex. A)

2.      By letter dated March 27, 2017, Plaintiffs outlined a narrowed time period as to the second part of the request by specifying the time period as "in August 2016" rather than "in the summer of 2016" as stated in the original request. (Williams Decl. ¶ 8 and Ex. C)

3.      By response letter dated March 10, 2022, the CIA asserted a *Glomar* response in part, citing FOIA Exemptions 1 and 3, but issued a final response letter to Plaintiffs, dated December 7, 2022, in which that was withdrawn. (Williams Decl. ¶ 14 and Ex. E)

4.      The CIA completed its search for responsive records to the FOIA request as narrowed in March 2023; in total, it identified 48 responsive documents. (Williams Decl. ¶¶ 18-19)

5.      The CIA withheld 31 documents in full pursuant to FOIA Exemptions 1, 3, 5, and/or 6, and withheld 17 documents in part pursuant to FOIA Exemptions 1, 3, and/or 6. (Williams Decl. ¶ 21 and accompanying *Vaughn* Index)

6.      The CIA has explained the basis for its withholdings in the accompanying Williams Declaration.  (Williams Decl. ¶¶ 21-48)

7.      CIA released all reasonably segregable, non-exempt information in the documents identified as responsive to Plaintiffs' FOIA request as narrowed.  (Williams Decl. ¶ 47)

Respectfully submitted,

MATTHEW M. GRAVES, D.C. BAR #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:    /s/ Jeremy S. Simon
JEREMY S. SIMON, D.C. BAR #447956
Assistant United States Attorney
601 D. Street, N.W.,
Washington, D.C. 20530
(202) 252-2528
Jeremy.Simon@usdoj.gov

*Counsel for United States of America*

## TABLES OF CONTENTS

FACTUAL AND PROCEDURAL BACKGROUND…………………………………………….2

LEGAL STANDARD………………………………………………………….…………2

ARGUMENT………………………………………………………………………...3

    I.    CIA CONDUCTED A REASONSBALE AND ADEQUATE SEARCH
        FOR RESPONSIVE RECORDS…………………………………………………3

        A.  Legal Standard……………………………………………………………3

        B.  CIA's Search…………………………………………..……………..5

    II.    CIA PROPERLY INVOKED FOIA EXEMPTIONS 1, 3, 5 and 6…………………6

        A.  Exemption 1 Withholdings…………………………………………...7

        B.  Exemption 3 Withholdings…………………………………...............10

        C.  Exemption 5 Withholdings…………………………………...............13

            1.  Privileges Protected by Exemption 5……………………………………13

                a.  Deliberative Process Privilege…………………………………13

                b.  Attorney Client Privilege………………………………………15

            2.  CIA's Withholdings Under Exemption 5……………………...............16

        D.  Exemption 6 Withholdings……………………………………………19

        E.  CIA Has Complied with FOIA's Segregability Requirement……………….……21

CONCLUSION………………………………………………………………………..22

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*Abtew v. DHS,*
808 F.3d 895 (D.C. Cir. 2015) .................................................................................... 14

*Access Reports v. U.S. Dep't of Justice,*
926 F.2d 1192 (D.C. Cir. 1991) ..................................................................... 13, 14, 15

*ACLU. v DHS,*
738 F. Supp. 2d 93 (D.D.C. 2010) .............................................................................. 17

*ACLU v. Dep't of Def.,*
628 F.3d 612 (D.C. Cir. 2011) ................................................................................ 2, 8

*Amadis v. U.S. Dep't of State,*
971 F.3d 364 (D.C. Cir. 2020) .................................................................................... 17

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ..................................................................................................... 2

*Anguimate v. Dep't of Homeland Sec.,*
918 F. Supp. 2d 13 (D.D.C. 2013) ............................................................................. 22

*Armstrong v. Exec. Office of the President,*
97 F.3d 575 (D.C. Cir. 1996) ...................................................................................... 21

*Benjamin v. Dep't of State,*
178 F. Supp. 3d 1 (D.D.C. 2016) ................................................................................. 2

*Bigwood v. Dep't of Def.,*
132 F. Supp. 3d 124 (D.D.C. 2015) ......................................................................... 3, 4

*Brinton v. Dep't of State,*
636 F.2d 600 (D.C. Cir. 1980) .................................................................................... 15

*Canning v. Dep't of Justice,*
567 F. Supp. 2d 104 (D.D.C. 2008) ............................................................................ 21

*Canning v. Dep't of State,*
346 F. Supp. 3d 1 (D.D.C. 2018) ................................................................................. 4

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ..................................................................................................... 2

*Center for Biological Diversity v. EPA,*
369 F. Supp. 3d 1 (D.D.C. 2019) ............................................................................... 18

*Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n,*
600 F. Supp. 114 (D.D.C. 1984) ................................................................................ 18

*Coastal States Gas Corp. v. U.S. Dep't of Energy,*
617 F.2d 854 (D.C. Cir. 1980) ..................................................................... 13, 14, 16

*Dep't of Air Force v. Rose,*
425 U.S. 352 (1976) .................................................................................................... 20

*Dep't of Def. v. Fed. Labor Rels. Auth.,*
510 U.S. 487 (1994) ................................................................................................ 6, 20

*Dep't of Just. v. Tax Analysts,*
492 U.S. 136 (1989) ..................................................................................................... 6

*DiBacco v. U.S. Army,*
795 F.3d 178 (D.C. Cir. 2015) .................................................................................... 11

*DOJ v. Reporters Comm. For Freedom of Press*,
    489 U.S. 749 (1989)...................................................................................................... 20

*Dudman Commc'ns Corp. v. Dep't of Air Force*,
    815 F.2d 1565 (D.C. Cir. 1987)..................................................................................... 15

*Electronic Privacy Info. Ctr. v. DOJ*,
    320 F. Supp. 3d 110 (D.D.C. 2018)................................................................................ 22

*FPL Group v. IRS*,
    698 F. Supp. 2d 66 (D.D.C. 2010)................................................................................. 15

*Gallant v. NLRB*,
    26 F.3d 168 (D.C. Cir. 1994)........................................................................................... 7

*Gold Anti-Trust Action Committee ("GATA") v. Board of* Governors,
    762 F. Supp. 2d 123 (D.D.C. 2011)............................................................................... 14

*Goodrich Corp. v. E.P.A.*,
    593 F. Supp. 2d 184 (D.D.C. 2009)............................................................................... 17

*Heggestad v. U.S. Dep't of Justice*,
    182 F. Supp. 2d 1 (D.D.C. 2000)................................................................................... 14

*Huntington v. Dep't of Commerce*,
    234 F. Supp. 3d 94 (D.D.C. 2017)................................................................................. 14

*Inst. for Pol'y Stud. v. CIA*,
    885 F. Supp. 2d 120 (D.D.C. 2012)............................................................................... 12

*Johnson v. Exec. Office for United States Attorneys*,
    310 F.3d 771 (D.C. Cir. 2002)....................................................................................... 22

*Jowett, Inc. v. U.S. Dep't of the Navy*,
    729 F. Supp. 871 (D.D.C. 1989)................................................................................... 15

*Jud. Watch, Inc. v. FDA*,
    449 F.3d 141 (D.C. Cir. 2006)......................................................................................... 3

*Jud. Watch, Inc. v. Rossotti*,
    285 F. Supp. 2d 17 (D.D.C. 2003)................................................................................... 4

*Judicial Watch, Inc. v. Department of Defense*,
    715 F.3d 937 (D.C. Cir.2 013)........................................................................................ 8

*Judicial Watch, Inc. v. Dep't of Justice*,
    365 F.3d 1108 (D.C. Cir. 2004)..................................................................................... 13

*Krikorian v. Dep't of State*,
    984 F.2d 461 (D.C. Cir. 1993)....................................................................................... 11

*Larson v. Dep't of State*,
    565 F.3d 857 (D.C. Cir. 2009)................................................................................. 10, 12

*Lasko v. Dep't of Just.*,
    No. 10-5068, 2010 WL 3521595 (D.C. Cir. Sept. 3, 2010)............................................. 5

*Lepelletier v. FDIC*,
    164 F.3d 37 (D.C. Cir. 1999)................................................................................... 19, 20

*Loving v. DOD*,
    550 F.3d 32 (D.C. Cir. 2008)......................................................................................... 22

*Marzen v. HHS*,
    825 F.2d 1148 (7th Cir. 1987) ....................................................................................... 18

*Maynard v. CIA*,
    986 F.2d 547 (1st Cir. 1993).......................................................................................... 5

*McCutchen v. Dep't of Health &Human Servs.,*
  30 F.3d 183 (D.C. Cir. 1994) ............................................................................ 6

*McGehee v. DOJ,*
  800 F. Supp. 2d. 220 (D.D.C. 2011) ................................................................ 12

*McKinley v. FDIC,*
  744 F. Supp. 2d 128 (D.D.C. 2010) ................................................................ 14

*Mead Data Cent., Inc. v. Dep't of Air Force,*
  566 F.2d 242 (D.C. Cir. 1977) .............................................................. 6, 15, 21

*Media Rsch. Ctr. v. Dep't of Just.,*
  818 F. Supp. 2d 131 (D.D.C. 2011) .................................................................. 3

*Military Audit Project v. Casey,*
  656 F.2d 724 (D.C. Cir. 1981) ......................................................................... 7

*Moore v. Bush,*
  601 F. Supp. 2d 6 (D.D.C. 2009) ..................................................................... 2

*Morley v. CIA,*
  508 F.3d 1108 (D.C. Cir. 2007) ...................................................................... 10

*Murphy v. Tenn. Valley Auth.,*
  571 F. Supp. 502 (D.D.C. 1983) ............................................................... 15, 16

*Nat'l Archive v. CIA,*
  752 F.3d 460 (D.C. Cir. 2014) ........................................................................ 14

*Nat'l Ass'n of Retired Fed. Employees v. Horner,*
  879 F.2d 873 (D.C. Cir. 1989) .................................................................. 20, 21

*Nat'l Treasury Emps. Union ("NTEU") v. U.S. Customs Serv.,*
  802 F.2d 525 (D.C. Cir. 1986) ......................................................................... 6

*Nat'l Wildlife Feed'n v. U.S. Forest Serv.,*
  861 F.2d 1114 (9th Cir. 1988) ........................................................................ 17

*NLRB v. Sears, Roebuck & Co.,*
  421 U.S. 132 (1975) ........................................................................................ 13

*Oglesby v. Dep't of Army,*
  920 F.2d 57 (D.C. Cir. 1990) ................................................................. 3, 4, 5, 6

*Perry v. Block,*
  684 F.2d 121 (D.C. Cir. 1982) ......................................................................... 4

*Physicians for Human Rights v. Dep't of,*
  Def., 675 F. Supp. 2d 149 (D.D.C. 2009) ......................................................... 4

*Privacy Info. Ctr. v. Dep't of Homeland Sec.,*
  384 F. Supp. 2d 100 (D.D.C. 2005) ...................................................... 15, 16, 17

*Pub. Citizen Health Rsch. Grp. v. FDA,*
  185 F.3d 898 (D.C. Cir. 1999) ......................................................................... 6

*Quarles v. Dep't of Navy,*
  893 F.2d 390 (D.C. Cir. 1990) ........................................................................ 15

*Reep v. Dep't of Just.,*
  302 F. Supp. 3d 174 (D.D.C. 2018) ................................................................ 10

*Reliant Energy Power Generation, Inc. v. FERC,*
  520 F. Supp. 2d 194 (D.D.C. 2007) ................................................................ 18

*Rockwell Int'l Corp. v. DOJ,*
  235 F.3d 598 (D.C. Cir. 2001) ........................................................................ 13

*SafeCard Servs., Inc. v. SEC*,
  926 F.2d 1197 (D.C. Cir. 1991) .................................................................... 3, 4
*Span v. Dep't of Just.*,
  696 F. Supp. 2d 113 (D.D.C. 2010) ................................................................. 3
*Spirko v. U.S. Postal Serv.*,
  147 F.3d 992 (D.C. Cir. 1998) ......................................................................... 7
*Steinberg v. Dep't of Just.*,
  23 F.3d 548 (D.C. Cir. 1994) ........................................................................... 4
*Sussman v. U.S. Marshals Serv.*,
  494 F.3d 1106 (D.C. Cir. 2007) ..................................................................... 21
*Tax Analysts v. IRS*,
  117 F.3d 607 (D.C. Cir. 1997) ....................................................................... 13
*U. S. Dep't of State v. Washington Post Co.*,
  456 U.S. 595 (1982) ....................................................................................... 19
*U.S. Dep't of Def. Dep't of Military Affairs v. Fed. Labor Relations Auth.*,
  964 F.2d 26 (D.C. Cir. 1992) ......................................................................... 20
*U.S. Dep't of Homeland Sec.*,
  648 F. Supp. 2d 152 (D.D.C. 2009) ............................................................... 13
*Vaughn v. Rosen*,
  484 F.2d 820 (D.C. Cir. 1973) ......................................................................... 6
*Vaughn v. Rosen*,
  523 F.2d 1136 (D.C Cir. 1975) ...................................................................... 15
*Weisberg v. Dep't of Just.*,
  705 F.2d 1344 (D.C. Cir. 1983) ............................................................... 2, 3, 4
*Weisberg v. Dep't of Just.*,
  745 F.2d 1476 (D.C. Cir. 1984) ....................................................................... 4
*West v. Spellings*,
  539 F. Supp. 2d 55 (D.D.C. 2008) ................................................................... 4
*Wolf v. CIA*,
  473 F.3d 370 (D.C. Cir. 2007) ......................................................................... 6

**Federal Statutes**

5 U.S.C. § 552 .................................................................................................... 1
5 U.S.C. § 552(b) .......................................................................................... 6, 21
5 U.S.C. § 552(b)(3) ........................................................................................ 10
5 U.S.C. § 552(b)(5) ........................................................................................ 13
5 U.S.C. § 552(b)(6) ........................................................................................ 19
50 U.S.C. § 3024(i)(1) ..................................................................................... 11
50 U.S.C. § 3507 ............................................................................................. 11

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YAHOO, INC., et al., Plaintiffs, v. CENTRAL INTELLIGENCE AGENCY, Defendant. | Civil Action No. 22-1477 (CKK) |

## <u>MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>

This case arises under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and pertains to a FOIA request submitted by Plaintiff Yahoo, Inc. and Michael Isikoff ("Plaintiffs") to Defendant, the Central Intelligence Agency ("CIA") dated January 24, 2017, consisting of two parts. The first part of the request sought "all records—including documents, emails, memos, calendar entries, and any other federal records—relating to a visit by Alexander Bortnikov, Director of the Russian FSB, to the CIA for a meeting with John Brennan, the director of the CIA, in Feb[ruary] 2015." The second part of the request, as subsequently narrowed by the Plaintiffs, sought "all records—including documents, emails, memos and any other federal records—relating to a phone call placed by Director Brennan to FSB Director Bortnikov" in August 2016.

As detailed in the accompanying Declaration of Mary C. Williams ("Williams Decl."), CIA conducted a search for responsive records, located 48 documents, and released 17 documents in part and withheld the remaining documents in full. CIA determined that the withheld material is subject to FOIA Exemptions 1, 3, 5, and 6. (Williams Decl. ¶¶ 47-48) Because the CIA conducted a reasonable search and has produced all responsive, non-exempt records subject to FOIA identified by that search, summary judgment should be granted in its favor.

## FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background is fully set forth in Defendant's Statement of Material Facts Not in Genuine Dispute, and the Williams Declaration, which are incorporated herein by reference.

## LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party seeking summary judgment must demonstrate an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has met its burden, the non-movant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Benjamin v. Dep't of State*, 178 F. Supp. 3d 1, 3 (D.D.C. 2016), *aff'd*, 2017 WL 160801 (D.C. Cir. Jan. 3, 2017) (quoting *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009)).  At summary judgment, the "agency must show beyond material doubt [ ] that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). An agency withholding records under a FOIA exemption "bears the burden of proving the applicability of [the] claimed exemptions." *ACLU v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. Dep't of Just.*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010).

The withholding agency may rely on declarations, a *Vaughn* index, or both to meet its burden. *See Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006). And this evidence is entitled to a "presumption of good faith." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

## ARGUMENT

### I.  CIA CONDUCTED A REASONABLE AND ADEQUATE SEARCH FOR RESPONSIVE RECORDS

#### A.  Legal Standard

Under FOIA, an agency is obligated to conduct a search that is "reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351; *see also Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("[T]he agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."); *Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 137 (D.D.C. 2011).  A reasonable search is one that covers those locations where responsive records are likely to be located.  *Oglesby*, 920 F.2d at 68.  To satisfy its obligation, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Id.*

A search is not inadequate merely because it failed to "uncover[] every document extant." *SafeCard Servs.*, 926 F.2d at 1201; *see also Bigwood v. Dep't of Def.*, 132 F. Supp. 3d 124, 135 (D.D.C. 2015) ("[T]he agency's search for records need not be exhaustive, but merely reasonable. The proper inquiry is not whether there might exist additional documents possibly responsive to a request, but whether the agency conducted a search reasonably calculated to uncover relevant documents."); *Jud. Watch, Inc. v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) ("Perfection is not the standard by which the reasonableness of a FOIA search is measured.").  A search is

inadequate only if the agency fails to "show, with reasonable detail, that the search method . . . was reasonably calculated to uncover all relevant documents." *Oglesby*, 920 F.2d at 68 (noting that an agency need not search every record system, but only those which it believes are likely to hold responsive records).

Accordingly, for a court evaluating an agency's search, the fundamental question is "whether the search for those documents was adequate," not "whether there might exist any other documents responsive to the request." *Steinberg v. Dep't of Just.*, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg v. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)); *see also Weisberg*, 705 F.2d at 1351 ("[T]he issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate.") (quoting *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982)).  The Court's inquiry, therefore, should focus on the method of the search, not its results.  *See, e.g., Bigwood*, 132 F. Supp. 3d at 135 (explaining that the adequacy of the search is judged by appropriateness of the methods used to carry out the search rather than by fruits of the search).  Agencies do not need to use every possible search term, *Canning v. Dep't of State*, 346 F. Supp. 3d 1, 14 (D.D.C. 2018), and "there is no bright-line rule requiring agencies to use the search terms proposed in a FOIA request," *Physicians for Human Rights v. Dep't of Def.*, 675 F. Supp. 2d 149, 164 (D.D.C. 2009).

The agency bears the burden of demonstrating the adequacy of its search by providing a declaration describing the search.  "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs.*, 926 F.2d at 1200 (internal quotation marks omitted); *West v. Spellings*, 539 F. Supp. 2d 55, 60 (D.D.C. 2008). Once an agency has met its burden of demonstrating the adequacy of its search, the agency's position can be rebutted "only by showing

that the agency's search was not made in good faith." *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993). Speculative or hypothetical assertions are insufficient to raise a material question of fact with respect to the adequacy of an agency's search. *See, e.g., Lasko v. Dep't of Just.*, No. 10-5068, 2010 WL 3521595, at *1 (D.C. Cir. Sept. 3, 2010) (per curiam) (explaining that the adequacy of the search is not undermined by mere speculation that additional documents might exist); *Oglesby*, 920 F.2d at 67 n.13.

### B.   CIA's Search

Here, the Williams Declaration establishes that the CIA conducted a reasonable search. As narrowed, Plaintiffs' FOIA request to the CIA sought (1) "all records—including documents, emails, memos, calendar entries, and any other federal records—relating to a visit by Alexander Bortnikov, Director of the Russian FSB, to the CIA for a meeting with John Brennan, the director of the CIA, in Feb[ruary] 2015;" and (2) "all records—including documents, emails, memos and any other federal records—relating to a phone call placed by Director Brennan to FSB Director Bortnikov" in August 2016. (Williams Decl. ¶¶ 6, 8; *id.* Exs. A, C).

In response, the CIA searched multiple record systems that, among other records, contain records associated with the Office of the Director of the CIA, which is the office likely to have records responsive to the request at issue, as the requests sought documents relating to a specific meeting or communication with the Director. (Williams Decl. ¶ 18) Those systems contain electronic versions of all agency records that have been reviewed and/or compiled for potential public release; an electronic inventory of archived agency records; databases for managing, coordinating, and archiving internal and external action items; and a database for creating and routing internal official memoranda. (*Id.*) The CIA also searched electronic systems containing email records of individuals' emails in the Office of the Director using a time period to encompass the requests. (*Id.*)

Accordingly, the CIA conducted a reasonable and adequate search for records responsive to Plaintiffs' FOIA request and summary judgment should be granted to the CIA as to the adequacy of its search.

## II.    CIA PROPERLY INVOKED FOIA EXEMPTIONS 1, 3, 5 and 6

FOIA does not allow the public to have unfettered access to government files. *McCutchen v. Dep't of Health &Hum. Servs.*, 30 F.3d 183, 184 (D.C. Cir. 1994).  Although disclosure is the dominant objective of FOIA, there are several exemptions to the statute's disclosure requirements. *Dep't of Def. v. Fed. Lab. Rels. Auth. ("FLRA")*, 510 U.S. 487, 494 (1994).  FOIA requires that an agency release all records responsive to a properly submitted request unless such records are protected from disclosure by one or more of FOIA's nine exemptions. 5 U.S.C. § 552(b); *Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 150-51 (1989).  To protect materials from disclosure, the agency must show that they come within one of FOIA's exemptions. *Pub. Citizen Health Rsch. Grp. v. FDA*, 185 F.3d 898, 904 (D.C. Cir. 1999).  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374-75 (D.C. Cir. 2007).

An agency may meet its burden to establish the applicability of an exemption by providing a *Vaughn* index that "permit[s] adequate adversary testing of the agency's claimed right to an exemption." *Nat'l Treasury Emps. Union ("NTEU") v. U.S. Customs Serv.*, 802 F.2d 525, 527 (D.C. Cir. 1986) (citing *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)); *Vaughn v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973)). The index must contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record." *NTEU*, 802 F.2d at 527 n.9.

Additionally, although a *Vaughn* index is a common device used by agencies to meet their burden of proof, "the Court may award summary judgment solely on the basis of information

provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Lab.*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)); *see also Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 998 n.4 (D.C. Cir. 1998) ("The form of the *Vaughn* index is unimportant and affidavits providing similar information can suffice.") (citing *Gallant v. NLRB*, 26 F.3d 168, 172-73 (D.C. Cir. 1994)).

As shown in the Williams Declaration, its exhibits, and the accompanying *Vaughn* Index, the CIA properly applied Exemptions 1, 3, 5 and/or 6 to withhold classified material; information the disclosure of which is prohibited by statute; information protected by the deliberative process and attorney-client privileges; and personally identifiable information of CIA employees and those associated with the CIA. Defendant describes each of these exemptions and the bases for their application below.

### A.    <u>Exemption 1 Withholdings</u>

Pursuant to Exemption 1, agencies may withhold records "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" and that "are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Executive Order 13,526 currently governs the classification of government records. 75 Fed. Reg. 707 (Dec. 29, 2009). Under that order's substantive criteria, information may be classified if it "pertains to" one or more of eight categories of information, *id*. § 1.4, and if an original classification authority has "determine[d] that the unauthorized disclosure of the information reasonably could be expected to result in [identifiable or describable] damage to the

national security," *id*. § 1.1(a)(4). Relevant here, information may be classified if it "pertains to" "intelligence activities . . . [,] sources or methods." *Id*. § 1.4(c). As the D.C. Circuit has previously noted, "pertains is not a very demanding verb." *Judicial Watch, Inc. v. Department of Defense*, 715 F.3d 937, 941 (D.C. Cir.2 013) (internal quotation marks omitted). And "[b]ecause courts lack the expertise necessary to second-guess . . . agency opinions in the typical national security FOIA case, [they] must accord substantial weight to an agency's affidavit concerning the details of the classified status of . . . disputed record[s]." *ACLU v. Dep't of Def.,* 628 F.3d 612, 619 (D.C. Cir. 2011) (internal quotation marks and citation omitted).

The CIA withheld information in the responsive records pursuant to Exemption 1 because it concerns "intelligence activities (including covert action), [or] intelligence sources or methods" and "foreign relations or foreign activities of the United States." (Williams Decl. ¶ 24) Additionally, the information's unauthorized disclosure could reasonably be expected to result in serious damage to national security and the responsive documents that contain classified information are properly marked in accordance with § 1.6 of the Executive Order.  (*Id*.)

Specifically, the records at issue contain classified information that would reveal certain CIA intelligence priorities and information about the development of specific priorities, as well as the objectives and locations of CIA intelligence activities. Disclosing this type of detail and information could reasonably be expected to damage national security because it would impair the CIA's ability to conduct intelligence activities in support of effective collection of foreign intelligence, by highlighting the specific targets of and how the CIA plans and carries out such activities.  (*Id*. ¶ 28)

The withheld information also implicates specific types of intelligence methods. As set forth in the Williams Declaration, "[t]he types of classified information about intelligence methods

contained within the documents at issue include information about methods of communications, both internal and external to CIA; specific methods of controls of information dissemination; locations of CIA stations or bases; and information about means and protocols of security used to carry out CIA's mission of intelligence collection." (*Id*. ¶ 30) The Williams Declaration explains that disclosure of this information could reasonably be expected to damage national security because it would impair the CIA's ability to continue to collect intelligence and conduct operations. (*Id*.)

Finally, certain documents discuss the processes and policies used in working with foreign services and foreign individuals aiding the CIA in its intelligence operations. The Williams Declaration explains that "[i]n addition to details about the nature of CIA relationships, the records at issue also reveal the classified plans for, purpose of, and extent of cooperation by individuals with the CIA. These details have been withheld because their disclosure would reveal intelligence priorities and the CIA's information-sharing relationships with specific sources of intelligence information." (*Id*. ¶ 32) Some of the withheld information also constitutes "foreign government information" and/or "information pertaining to the foreign relations or activities of the United States" under Executive Order 13,526. (*Id*.) Disclosure of the details of these relationships could harm or jeopardize the agency's relationship with these or other individuals or entities in the future by undermining individuals' expectation that the agency will protect the existence and details of their engagement with the CIA. (*Id*. ¶ 33) As explained in the Williams Declaration, "[t]he disclosure of such information reasonably could be expected to impair the ability of the CIA to maintain such classified relationships presently and in the future, which would in turn hinder its ability to carry out its core mission." (*Id*.) Thus, "disclosing the nature of these relationships could reasonably be expected to harm national security because it would reveal certain interests

and activities of the U.S. Government, and could lead to the deterioration of relationships, thereby decreasing the CIA's access to information." (*Id.*)

The CIA has satisfied its burden to show that the records withheld in full, and information in records withheld in part, are properly classified under Executive Order 13,526, and that they are, therefore, properly withheld under FOIA Exemption 1. The declaration describes the records and the agency's reasons for withholding them. *See Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009). The declaration, moreover, amply demonstrates that the information withheld "pertains to" "intelligence activities . . . [,] sources or methods," Exec. Order 13,526, § 1.4(c), and that its disclosure could reasonably be expected to damage national security, *id.* § 1.1(a)(4). The agency's explanations as to why the records are classified are both "logical" and "plausible," and uncontroverted by evidence in the record. *Larson*, 565 F.3d at 862 (internal quotation marks omitted). Accordingly, the CIA has met its burden with respect to the information withheld under Exemption 1.

### B.    <u>Exemption 3 Withholdings</u>

FOIA Exemption 3 exempts from disclosure records when they are:

> specifically exempted from disclosure by statute ... if that statute (A)(i) requires that the matter be withheld from the public in such a manner as to leave no discretion on the issue; or (A)(ii) establishes particular criteria from withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the Open FOIA Act of 2009, specifically cites to this paragraph.

5 U.S.C. § 552(b)(3); *Reep v. Dep't of Just.*, 302 F. Supp. 3d 174, 183 (D.D.C. 2018), *aff'd*, No. 18-5132, 2018 WL 6721099 (D.C. Cir. Dec. 18, 2018). Thus, the sole issue for decision "is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Morley v. CIA,* 508 F.3d 1108, 1126 (D.C. Cir. 2007).

The CIA withheld information from the responsive records under Exemption 3 based on section 102A(i)(1) of the National Security Act of 1947, as amended, 50 U.S.C. § 3024(i)(1) (the

"National Security Act"), and the Central Intelligence Agency Act of 1949, as amended, 50 U.S.C. § 3507. (Williams Decl. ¶ 35)

The National Security Act requires the Director of National Intelligence to protect "intelligence sources and methods" from "unauthorized disclosure." 50 U.S.C. § 3024(i)(1).The National Intelligence Director has promulgated Intelligence Community Directive 700, which directs elements of the intelligence community to "[p]rotect[ ] national intelligence and intelligence sources, methods, and activities from unauthorized disclosure[.]" Intelligence Community Directive (ICD) 700, at 1 (June 7, 2012), *available at* https://www.odni.gov/files/documents/ICD/ICD-700.pdf (last visited January 24, 2024).

The CIA is thus required to protect intelligence sources and methods.   (Williams Decl. ¶ 36)   The D.C. Circuit has repeatedly held that the National Security Act "is a valid Exemption 3 statute." *DiBacco v. U.S. Army,* 795 F.3d 178, 183 (D.C. Cir. 2015); *see also Krikorian v. Dep't of State*, 984 F.2d 461, 465 (D.C. Cir. 1993).  Plainly, Congress has mandated the protection of the Intelligence Community's sources and methods of gathering intelligence. And the CIA has determined that some of the records responsive to Plaintiffs' request that either were withheld in full or in part pursuant to Exemption 1 contain classified information related to intelligence sources and methods of intelligence collection that also are protected from disclosure under the National Security Act. (Williams Decl. ¶ 36)  Exemption 3 in conjunction with the National Security Act also applies to and protects intelligence sources and methods of the Agency that are not classified and are, therefore, not covered by Exemption 1 and the CIA has determined that Exemption 3 applies independently to certain unclassified information protected by the National Security Act and/or CIA Act.  (*Id.* ¶¶ 36, 39).

Section 6 of the CIA Act, which provides that "the Agency shall be exempted from the provisions of any . . . law which require the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency," also is a well-established Exemption 3 statute. *See Larson,* 565 F.3d at 865 n.2. Pursuant to section 6 of the CIA Act, the CIA withheld identifying information including names, titles, identification numbers, functions of specific agency personnel and offices, and organizational information related to the Agency and its employees. (Williams Decl. ¶ 37) This information clearly falls within the ambit of the protections of the CIA Act. *See Inst. for Pol'y Stud. v. CIA,* 885 F. Supp. 2d 120, 147 (D.D.C. 2012) (concluding that Agency properly withheld polygraph interview, organizational and functional information as well as signatures, employee's names and personal identifiers); *McGehee v. Dep't of Just.*, 800 F. Supp. 2d. 220, 232 (D.D.C. 2011) (determining that "'given the special deference owed to agency affidavits on national security matters,'" CIA properly withheld "'information relating to its functions, foremost of which is the collection of foreign intelligence through intelligence sources and methods, as well as the names of CIA employees, and organizational data, including location of facilities, file numbers and dissemination controls and markings'").

Although the application of Exemption 3 to the withheld information does not impose a requirement to articulate harm, disclosure of this withheld information would be harmful to the interests of national security as discussed in the Williams Declaration. (Williams Decl. ¶ 38) The CIA accordingly properly applied Exemption 3 to withhold information in connection with the National Security Act and CIA Act.

C.   **Exemption 5 Withholdings**

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption shields documents of the type that would be privileged in the civil discovery context, including materials protected by the deliberative process privilege, attorney client privilege and attorney work product. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *see Jud. Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108, 1113 (D.C. Cir. 2004); *Rockwell Int'l Corp. v. Dep't of Just.*, 235 F.3d 598, 601 (D.C. Cir. 2001).

The CIA withheld under Exemption 5 information from four documents on the basis of the deliberative process privilege and also, as to one document on the basis of the attorney-client privilege. (Williams Decl. ¶¶ 40-43)

1.   **Privileges Protected By Exemption 5**

a.   Deliberative Process Privilege

The deliberative process privilege is designed to prevent injury to the quality of agency decisions by (1) encouraging open, frank discussions on matters of policy between subordinates and superiors; (2) protecting against premature disclosure of proposed policies before they are adopted; and (3) protecting against public confusion that might result from the disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's decision. *See Sears*, 421 U.S. at 151-53; *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *CREW v. Dep't of Homeland Sec.*, 648 F. Supp. 2d 152, 156 (D.D.C. 2009).

To invoke the deliberative process privilege, an agency must show that the exempt document is both pre-decisional and deliberative. *Access Reports v. Dep't of Just.*, 926 F.2d 1192, 1194 (D.C. Cir. 1991); *Coastal States*, 617 F.2d at 868; *Tax Analysts v. IRS*, 117 F.3d 607, 616

(D.C. Cir. 1997). To show that a document is pre-decisional, the agency need not identify a specific final agency decision; it is sufficient to establish "'what deliberative process is involved, and the role played by the documents at issue in the course of that process.'" *Heggestad v. Dep't of Just.*, 182 F. Supp. 2d 1, 7 (D.D.C. 2000) (quoting *Coastal States Gas*, 617 F.2d at 868); *see Gold Anti-Tr. Action Comm. (*"*GATA*"*) v. Bd. of Governors,* 762 F. Supp. 2d 123, 135-36 (D.D.C. 2011) ("even if an internal discussion does not lead to adoption of a specific government policy, its protection under Exemption 5 is not foreclosed as long as the document was generated as part of a definable decision-making process.").

Thus, a document is "'predecisional' if it precedes, in temporal sequence, the 'decision' to which it relates.'" *Abtew v. Dep't of Homeland Sec.,* 808 F.3d 895, 898 (D.C. Cir. 2015). Exemption 5, however, is not dependent on whether a final decision ultimately resulted from the employee's deliberations. Were it otherwise, the purpose of the exemption would be defeated because "[a]t the time of writing the author could not know whether the decisionmaking process would lead to a clear decision, establishing the privilege, or fizzle, defeating it." *Access Reps.,* 926 F.2d at 1196. The focus of Exemption 5 instead is whether the document was part of the decisionmaking process. *Id.*; *see also Nat'l Archive v. CIA,* 752 F.3d 460, 463 (D.C. Cir. 2014) ("The term 'deliberative' in this context means, in essence, that the communication is intended to facilitate or assist development of the agency's final position on the relevant issue."); *Huntington v. Dep't of Com.,* 234 F. Supp. 3d 94, 110 (D.D.C. 2017) ("The challenged documents precede the final patentability decision and are part of the process by which that decision is made; they therefore are predecisional and deliberative.")

A document is "deliberative" if it "'reflects the give-and-take of the consultative process.'" *McKinley v. FDIC,* 744 F. Supp. 2d 128, 138 (D.D.C. 2010). Thus, "'pre-decisional materials are

not exempt merely because they are pre-decisional; they also must be part of the agency give-and-take of the deliberative process by which the decision itself is made.'" *Jowett, Inc. v. Dep't of Navy*, 729 F. Supp. 871, 875 (D.D.C. 1989) (quoting *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C Cir. 1975)).   The privilege protects factual material if it is "inextricably intertwined" with deliberative material, *FPL Grp. v. IRS,* 698 F. Supp. 2d 66, 81 (D.D.C. 2010), or if disclosure "would 'expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.'" *Quarles v. Dep't of Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990)) (quoting *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987).   "The 'key question' in identifying 'deliberative' material is whether disclosure of the information would 'discourage candid discussion within the agency.'" *Access Reports*, 926 F.2d at 1195.

### b.    Attorney Client Privilege

The attorney-client privilege protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead Data,* 566 F.2d at 252.   "Like the deliberative process privilege, the attorney-client privilege helps improve the quality of agency decision making by safeguarding the free flow of information that is a necessary predicate for sound advice." *Murphy v. Tenn. Valley Auth.,* 571 F. Supp. 502, 506 (D.D.C. 1983).   The privilege applies "'primarily to facts divulged by client to attorney, but … also includes opinions from attorney to client based on those facts,'" *id.* (quoting *Brinton v. Dep't of State,* 636 F.2d 600, 605-06 (D.C. Cir. 1980)), "as well as communications between attorneys that reflect client-supplied information." *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.,* 384 F. Supp. 2d 100, 114 (D.D.C. 2005).

The attorney-client privilege is "not limited to communications made in the context of litigation or even a specific dispute, but extends to all situations in which an attorney's counsel is sought on a legal matter." *Coastal States,* 617 F.2d at 862.  The agency has an affirmative obligation to show that the communication was, and continues to be, confidential, *id.* at 863; however, limited circulation within an agency to employees involved in a matter for which advice is sought does not breach confidentiality. *Murphy,* 571 F. Supp. at 506.  "The privilege applies to confidential communications made to an attorney by both high-level agency personnel and lower-echelon employees." *Elec. Privacy,* 384 F. Supp. 2d at 114.

### 2.    CIA's Withholdings Under Exemption 5

As explained in the accompanying Williams Declaration, the CIA withheld in full four documents under Exemption 5 (in addition to withholding those documents in full based on other exemptions[1]) based on the deliberative process privilege to protect draft talking points and other draft deliberations that reflect the agency's decision-making process.  (Williams Decl. ¶ 41) These intra-agency communications do not convey final agency viewpoints on a particular matter, but rather reflect different considerations, opinions, options, and approaches at interim stages that preceded an ultimate decision or that were part of a policy-making process.  (*Id.*)

The four documents withheld in full pursuant to Exemption (b)(5) based on the deliberative process privilege (in addition to being withheld in full on the basis of other exemptions) contain intra-agency talking points drafted for proposed use in conversations with liaison representatives and an intra-agency draft memorandum detailing proposed outreach and engagements with foreign representatives, among other priority engagements.   Three of the four documents are proposed

---

[1]    These documents also were withheld on the basis of Exemptions 1, 3 and 6. (Williams Decl. ¶ 41 and Index Nos. 2, 4, 20, and 21 of the accompanying *Vaughn* Index)

intra-agency talking points that were drafted to prepare senior CIA leadership for discussion with liaison representatives and the suggested positions in the talking points reveal internal pre-decisional CIA strategy suggested to CIA senior leadership.  (*Id*.)  The fourth document is a draft copy of a detailed internal agency memorandum regarding senior CIA leadership engagement with various foreign representatives and other engagements on specific intelligence interests, which preceded an ultimate decision as to such engagements.  (*Id*.)

Each of these documents is therefore pre-decisional and deliberative both as to the potential agency positions on specific topics that might arise in the course of specific meetings, the underlying policy processes with regards to engagement with foreign representatives, and suggested engagements of interest to senior CIA leadership.  (*Id*.)  Accordingly, the CIA properly applied Exemption 5 to these documents on the basis of the deliberative process privilege.  *See, e.g., Amadis v. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020) ("a recommendation does not lose its predecisional or deliberative character simply because a final decisionmaker later follows or rejects it without comment"); *ACLU v. Dep't of Homeland Sec.*, 738 F. Supp. 2d 93, 112 (D.D.C. 2010) (concluding that talking points are pre-decisional  because "the document itself suggests that a public statement was anticipated at the time of its creation, and given that no official statement has yet been made, the talking points remain ripe recommendations that are ready for adoption or rejection by the Department"); *Goodrich Corp. v. EPA*, 593 F. Supp. 2d 184, 189 (D.D.C. 2009) ("As a general matter, 'drafts' of documents are exempt from disclosure under the deliberative process privilege."); *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1122 (9th Cir. 1988) ("To the extent that [the requester] seeks through its FOIA request to uncover any discrepancies between the findings, projections, and recommendations between the draft[s] prepared by lower-level [agency] personnel and those actually adopted, . . . it is attempting to probe

the editorial and policy judgments of the decisionmakers."); *Marzen v. Dep't of Health & Hum. Servs.*, 825 F.2d 1148, 115 (7th Cir. 1987) (noting the "exemption protects not only the opinions, comments and recommendations in the draft, but also the process itself"); *Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 204 (D.D.C. 2007) ("An agency need not demonstrate the extent to which the draft differs from the final document because such a showing would 'expose what occurred in the deliberative process between the draft's creation and the final document's issuance.'"); *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (protecting preliminary scientific data generated in connection with study of chemical); *Ctr. for Biological Diversity v. EPA,* 369 F. Supp. 3d 1, 19 (D.D.C. 2019) ("In short, multiple decisions contribute to formulating what data to collect and how, and the relevant analytical tests to conduct and under what conditions, to reach a decision under ESA's section 7(a)(2)" and thus Exemption 5 applies); *Waterkeeper All. v. U.S. Coast Guard*, No. 13-289, 2014 U.S. Dist. LEXIS  151959 at *59-60 (D.D.C. Sept. 29, 2014) ("internal agency communications or strategic deliberations drafted in response to media inquiries" are protected under Exemption 5).

The CIA also invoked Exemption 5 on one document (document C07027484) to protect attorney-client privileged information.  (Williams Decl. ¶ 43 and Index No. 30 on accompanying *Vaughn* Index) The withheld document reflects confidential client communications exchanged between agency employees and attorneys within the CIA on issues related to interactions with foreign government representatives in compliance with federal law. The primary purpose of these communications was to seek and provide legal advice.  (Williams Decl. ¶ 43) Accordingly, CIA has properly withheld that information under Exemption 5 on the basis of the attorney-client privilege.

The CIA also has established that disclosure of the information withheld under Exemption 5 would result in foreseeable harm to the interests protected by the exemption.  Talking points prepared by an agency employee for a senior agency official are an important part of preparation for and conduct of meetings in which sensitive policies and intelligence interests are discussed and in which policy-oriented judgment must be exercised. (Williams Decl. ¶ 41) Protecting these documents from disclosure is critical to ensure that government officials can provide detailed and frank written analysis and recommendations to senior leaders, without risk of public scrutiny, in advance of final action taken by senior leadership on CIA positions.  Disclosure of this information thus would result in the foreseeable harm of making it less likely that future drafters, contributors, or editors of talking points on sensitive intelligence matters will be as candid and forthcoming in making comprehensive assessments and recommendations to senior leaders. Disclosure would thus quiet frank discussion between junior staff and senior leadership on national security issues of critical importance, and therefore impact the quality of agency deliberations in the policy-making process.  (*Id.* ¶ 42) Similarly, disclosure of legal advice from attorneys to clients also would impact the ability of such attorneys to offer candid legal advice.

### D.    <u>Exemption 6 Withholdings</u>

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  "The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual."  *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (quoting *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982)).  The Supreme Court has also emphasized that "both the common law and the literal understanding of privacy encompass the individual's control

of information concerning his or her person." *Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 763 (1989).

To determine whether there would be a "clearly unwarranted invasion of personal privacy," the Court must balance the interests of protecting "an individual's private affairs from unnecessary public scrutiny," and "the public's right to governmental information." *Lepelletier*, 164 F.3d at 46 (interior quotation marks omitted) (citing *Dep't of Def. v. FLRA*, 964 F.2d 26, 29 (D.C. Cir. 1992), *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976)).

In determining how to balance the private and public interests involved, the Supreme Court has sharply limited the notion of "public interest" under the FOIA:

> [T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.

*Lepelletier*, 164 F.3d at 46 (quoting *Dep't of Def. v. FLRA*, 510 U.S. 487, 497 (1994)); *see also Reps. Comm.*, 489 U.S. at 773. Information that does not directly reveal the operation or activities of the federal government "falls outside the ambit of the public interest that the FOIA was enacted to serve." *Id.* at 775. Further, "something, even a modest privacy interest, outweighs nothing every time." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989).

As discussed in the Williams Declaration, forty-two of the documents at issue contain personally identifiable information, including names and other identifying information, of individuals employed by the CIA, as well as individuals associated with the agency. (Williams Decl. ¶ 45) The CIA has determined that the release of the redacted names and other identifying information is reasonably likely to subject those individuals, or individuals closely associated with them, to increased harassment or threats based on their employment by or association with the CIA, or to unwanted contact for further information. (*Id.*) In contrast, the CIA has identified no

discernible public interest in disclosure of these individuals' names or other identifying information that outweighs their privacy interest in such information. In other words, revealing the identities of these specific individuals, or information that would allow them to be identified, will not shed light on the conduct of the agency's activities or operations beyond what is already disclosed to the public in the released information. (*Id*.)  However, where a document refers to high ranking officials, such that the disclosure of that individual's connection to the information at issue is potentially relevant to an understanding of the government's actions, those names were not redacted under Exemption 6.  (*Id*.)  Thus, the CIA has properly met its burden of withholding this information under Exemption 6.

### E.    CIA Has Complied with FOIA's Segregability Requirement

Under the FOIA, if a record contains information exempt from disclosure, any "reasonably segregable," non-exempt information subject to FOIA must be disclosed after redaction of the exempt information.  5 U.S.C. § 552(b).  Non-exempt portions of records need not be disclosed if they are "inextricably intertwined with exempt portions."  *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated.  *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Just.*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008).  "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester.  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007); *see also Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) ("The combination of the *Vaughn* index and the

affidavits . . . are sufficient to fulfill the agency's obligation to show with 'reasonable specificity' why a document cannot be further segregated."); *Loving v. Dep't of Def.,* 550 F.3d 32, 41 (D.C. Cir. 2008) ("Here the district court relied on the very factors that we have previously deemed sufficient for this determination, i.e., the description of the document set forth in the *Vaughn* index and the agency's declaration that it released all segregable material."); *see also Elec. Privacy Info. Ctr. v. Dep't of Just.*, 320 F. Supp. 3d 110, 120-21 (D.D.C. 2018) (same); *Anguimate v. Dep't of Homeland Sec.*, 918 F. Supp. 2d 13, 22 (D.D.C. 2013) (same).

    Here, the CIA's declarant has attested that a document-by-document and line-by-line review was conducted and that all reasonably segregable, non-exempt information has been provided, coupled with a *Vaughn* Index describing the applicability of the FOIA exemptions to the withholdings.  (Williams Decl. ¶ 47)

## **CONCLUSION**

    For the above reasons, the Court should grant the CIA summary judgment.

                            Respectfully submitted,

                            MATTHEW M. GRAVES, D.C. Bar #481052
                            United States Attorney

                            BRIAN P. HUDAK
                            Chief, Civil Division

                            By:  _____*/s/ Jeremy S. Simon*_____
                                JEREMY S. SIMON, D.C. Bar # 447956
                                Assistant United States Attorney
                                601 D Street, NW
                                Washington, DC 20530
                                202-252-2528
                                Jeremy.Simon@usdoj.gov

                            *Attorneys for the United States of America*